# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-481V
UNPUBLISHED

| | |
|---|---|
| MARIJO WASHBURN,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: January 25, 2024<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Katherine Carr Esposito*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On January 11, 2021, Marijo Washburn filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 29, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.   Relevant Procedural History

During the claim's life, some effort was made at settlement, but the parties could not find agreement. Respondent subsequently filed a Rule 4(c) Report on August 22, 2022, contesting entitlement. Respondent argues that Petitioner has not established a Table claim because she did not experience reduced range of motion and her pain was not limited to her shoulder. Respondent's Rule 4(c) Report, ECF No. 27, at 7-8. Petitioner was ordered to file a motion for a ruling on the record, doing so on December 1, 2022. Petitioner's Motion for a Ruling on the Record ("Mot."), ECF No. 30. Respondent filed a response on December 14, 2022. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 31. The matter is ripe for resolution.

## II.   Petitioner's Medical Records

Petitioner received a flu vaccine in her left shoulder on October 9, 2019. Ex. 1 at 2. Twenty days later, she reported weakness in her left hand and pain in her shoulder that she said had started the day she received the vaccine. Ex. 2 at 31. An examination showed that Petitioner had reduced strength and pain with movement, but a full range of motion. *Id.* at 31, 33. She was diagnosed with radicular left arm pain (*id.* at 33), however an ultrasound on November 7, 2019 was essentially normal. Ex. 8 at 1.

On December 18, 2019, Petitioner saw Dr. David Glaser, an orthopedic surgeon. Ex. 3 at 12. Dr. Glaser diagnosed her with bursitis, ordered an MRI, and advised her to consult physical and occupational therapies two to three times a week. *Id.* at 12, 15. Dr. Glaser wrote a letter to Petitioner's primary care provider, Dr. Oler, stating that Petitioner reported severe pain "for about [six] weeks." Ex. 3 at 17. Further, Petitioner had exhibited difficulty reaching, lifting, pulling, and sleeping, however Dr. Glaser noted she had "full range of motion." *Id.* An MRI on January 10, 2020, showed signs of probable adhesive capsulitis, but an intact rotator cuff. Ex. 4 at 39-40; Ex. 3 at 23-24.

On January 29, 2020, Petitioner saw Dr. Glaser for a follow-up visit. Ex. 3 at 18. Dr. Glaser noted that Petitioner's range of motion was "improving", but she was frustrated and still reported shoulder pain. *Id.* at 22. She was diagnosed with "[r]esolving adhesive capsulitis and now cuff disease, rotator cuff tendinitis." *Id.*

Petitioner next sought care for shoulder pain on June 19, 2020, with Dr. Stephen Stache. Ex. 4 at 16-18. Petitioner reported left shoulder pain following "a flu shot she received in October…. [B]efore she could start physical therapy the pandemic closed most offices [and] her pain has worsened." *Id.* at 16. An examination showed "significant limitations with internal and external rotation." *Id.* at 17. Dr. Stache diagnosed Petitioner

2

with calcific periarthritis and bursitis, arthralgia of the shoulder region. *Id.* A glenohumeral injection of Kenalog/Marcaine was administered to her left shoulder at that time. *Id.* at 17-18.

Petitioner began physical therapy on June 29, 2020. Ex. 4 at 42. The records note that Petitioner "presents with shoulder pain, stiffness, weakness, limited ROM, and difficulty with daily function. Pain began with a flu vaccine in October 2019 with immediate left arm pain to the fingers [and] radiates to the elbow and the forearm." *Id.* Petitioner was diagnosed with adhesive capsulitis of the left shoulder (Ex. 7 at 20) and was advised to undergo physical therapy two to three times a week for six weeks (Ex. 4 at 43).

Between July and August 2020, Petitioner completed fifteen physical therapy sessions. Ex. 7 at 21-52. She was reevaluated on August 20, 2020, and noted to be progressing well. *Id.* at 45.

On August 27, 2020, Petitioner returned to Dr. Stache with complaints of continued shoulder pain. Ex. 4 at 7. Dr. Stache noted that Petitioner made "great progress with ROM", but still had pain and weakness. *Id.* Dr. Stache opined that Petitioner had "recovered from her adhesive capsulitis and is still dealing with some residual rotator cuff tendinitis and bursitis." *Id.* at 8.

On October 2, 2020, Petitioner was discharged from physical therapy, as she had not been treated in over 30 days and was noted to have received an injection at the end of August. Ex. 7 at 58. Petitioner had received sixteen total physical therapy treatments and had not missed any scheduled therapy. *Id.* at 57.

### III.  Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical

professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence supports the determination that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain twenty days after her October 9, 2019 flu vaccination, and at this time associated her shoulder pain with the earlier vaccination. Ex. 2 at 31. No other records are inconsist. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

Respondent argues that Petitioner did not exhibit reduced range of motion for months after vaccination, and thus cannot meet the table requirements for a SIRVA. Opp. at 6-7. A Table SIRVA injury does require that a petitioner establish limited or reduced range of motion. *Bolick v. Sec'y of Health & Hum. Servs.*, No. 20-893V, 2023 WL

8187307, at *6 (Fed. Cl. Oct. 19, 2023). However, there is no requirement that the reduced range of motion occurs *within a specific timeframe* – different from what is required with respect to pain (which *must* be shown to have likely begun within 48 hours of vaccination). *Id.; Robuck v. Sec'y of Health & Hum. Servs.*, No. 20-0465V, 2023 WL 6214986, at *6 (Fed. Cl. Aug. 21, 2023).

Here, although range of motion limitations did not occur close in time to vaccination, they did later occur. Petitioner's reduced range of motion was not evident until January 29, 2020, approximately four months after vaccination, when Dr. Glaser noted that her range of motion was improving. Ex. 3 at 18. The records also show that Petitioner exhibited limited range of motion in June of 2020. Ex. 4 at 17. As noted above, the QAI does not set a timeframe for when reduced range of motion must be shown. Accordingly, there is preponderant evidence that establishes Petitioner experienced reduced range of motion in her left shoulder.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Respondent claims that Petitioner cannot establish that her pain was limited to her shoulder because she also reported radiating pain that extended beyond her shoulder into her elbow, forearm, and fingertips. Opp. at 7. While Respondent's argument has merit, it ultimately fails to rebut Petitioner's Table showing.

The record contains reports of non-shoulder pain that radiated down Petitioner's arm, but at the same time consistently identifies pain in her left shoulder. Ex. 2 at 31, Ex. 4 at 16, 42. Petitioner's complaints, and the diagnoses, are also primarily focused on the shoulder. *See, e.g.*, Ex. 3 at 22 (January 29, 2020, record diagnosing discussing Petitioner's adhesive capsulitis and rotator cuff tendinitis).

Admittedly, pain reported in Petitioner's arm and fingers may be unrelated to Petitioner's SIRVA – but that kind of complaint or injury can be addressed when calculating damages. The mere existence of such record complaints does not defeat a showing that Petitioner not only did experience shoulder-specific pain, but that most of her complaints and treatment efforts were aimed at that. Accordingly, preponderant evidence supports this Table element as well.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. §

6

100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 9, 2019, in the United States. Ex. 1 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 6; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**Accordingly, the parties shall file a Joint Status Report by February 26, 2024, indicating whether a brief attempt at settlement discussions would be productive.**

**IT IS SO ORDERED.**

                                                    /s/ **Brian H. Corcoran**
                                                    Brian H. Corcoran
                                                    Chief Special Master